FILED
2022 Sep-29  AM 10:28
PFE/CLC/KSO Oct 22
GJ#20
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **TIMOTHY J. PUGHSLEY,** | ) | |
| **GARY L. RAPP, JR.** | ) | |
| **MARK GIAQUINTO,** | ) | |
| **MATTHEW D. VOORHEES,** | ) | **No. 2:22-cr-35-MHH-JHE** |
| **DAVID RICHARDS,** | ) | |
| **CHRISTOPHER DONALDSON,** | ) | |
| **JOSHUA GENTRUP,** | ) | |
| **CHRISTOPHER BURDETTE,** | ) | |
| **NATHANAEL BURDETTE,** | ) | |
| **JONATHAN LIND, and** | ) | |
| **THOMAS V. ZITO,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## SECOND SUPERSEDING INDICTMENT

The Grand Jury charges that:

### INTRODUCTION

At all times relevant to this Second Superseding Indictment:

1.      Defendant TIMOTHY J. PUGHSLEY ("PUGHSLEY") primarily resided in the Northern District of Alabama and operated the Red44 Organization.

2.      Defendant GARY L. RAPP, JR. ("RAPP") primarily resided in Tennessee and operated as a Senior Agent within the Red44 Organization reporting directly to Defendant PUGHSLEY.

3.    Defendant MARK GIAQUINTO ("GIAQUINTO") primarily resided in Massachusetts and operated as a Senior Agent within the Red44 Organization reporting directly to Defendant RAPP.

4.    Defendant MATTHEW D. VOORHEES ("VOORHEES") primarily resided in Colorado and operated as a Senior Agent within the Red44 Organization reporting directly to Defendant PUGHSLEY.

5.    Defendant DAVID RICHARDS ("RICHARDS") primarily resided in Nevada and operated as a Senior Agent within the Red44 Organization reporting directly to Defendant PUGHSLEY.

6.    Defendant CHRISTOPHER DONALDSON ("DONALDSON") primarily resided in the Northern District of Alabama and was an original founding member of the Red44 Organization. Defendant DONALDSON operated as a Senior Agent within Red44.

7.    Defendant JOSHUA GENTRUP ("GENTRUP") primarily resided in Georgia and was a sub-agent in the Red44 Organization that reported to Defendant DONALDSON.

8.    Defendant CHRISTOPHER BURDETTE ("C. BURDETTE") primarily resided in the Northern District of Alabama and was a Senior Agent in the Red44 Organization.

9.      Defendant NATHANAEL BURDETTE ("N. BURDETTE") primarily resided in the Northern District of Alabama and was a Senior Agent in the Red44 Organization.

10.     Defendant JONATHAN LIND ("LIND") primarily resided in the Northern District of Alabama and was a bookmaker in the Red44 Organization reporting directly to Defendant PUGHSLEY.

11.     Defendant THOMAS V. ZITO ("ZITO") primarily resided in the Northern District of Alabama and was a Senior Agent in the Red44 Organization reporting directly to Defendant PUGHSLEY.

## RED44 AND THE BOOKMAKING ORGANIZATION

12.     Defendant PUGHSLEY operated Red44, a gambling website with servers located in Costa Rica. Red44 functioned as a pay-per-head service providing bookmakers in the Northern District of Alabama and elsewhere with access to an online gambling platform that their bettors could use to place and track bets.

13.     Bookmaking involved an organization or person, known as a "bookmaker" or "bookie," or within the Red44 organization as an "Agent," who took bets on sporting events at agreed-upon odds.

14.     Red44 operated as the book for the bookmakers, documenting each bettor's personal information, bets placed, game odds, winners and losers, amounts paid in or out to bettors, bad debts, and amounts owed to other bookmakers. Red44

also calculated other data, such as gross income to the bookmaker, expenses, total wagers accepted by the bookmaker, and excise taxes owed to the Internal Revenue Service ("IRS") on wagers.

15.    Each bookmaker was responsible for marketing Red44, soliciting new bettors, paying out winnings, and collecting losses to and from the bettors.

16.    Red44 provided bookmakers' bettors with access to wagering odds and point spreads to place bets on sporting events. Bettors generally placed bets on credit; no money was exchanged through the Red44 online platform.

17.    Defendant PUGHSLEY paid Individual A a pay-per-head fee for direct access to the Red44 website.

18.    Defendant PUGHSLEY charged each sub-agent or bookmaker a weekly fee per active bettor account, known as a "pay per head" fee, to provide access to Red44 so that bettors could place bets. Defendant PUGHSLEY was also paid a percentage of each bookmaker's collected losses.

19.    Defendants  PUGHSLEY,  RAPP,  GIAQUINTO,  VOORHEES, RICHARDS, DONALDSON, GENTRUP, C. BURDETTE, N. BURDETTE, LIND, and ZITO, along with other persons known and unknown to the Grand Jury, operated as bookmakers in the Red44 organization based in the Northern District of Alabama.

20.    Defendants  RAPP,  GIAQUINTO,  VOORHEES,  RICHARDS, DONALDSON, GENTRUP, C. BURDETTE, N. BURDETTE, LIND, and ZITO,

along with other persons known and unknown to the Grand Jury, operated as sub-agents of PUGHSLEY.

21.    The Red44 Organization operated similarly to a multi-level marketing business. As previously noted, bookmakers were paid a percentage of their sub-agents' profits. As bookmakers grew the number of bettors within their down-line, their percentage of collected losses grew. Bookmakers also paid a percentage of collected losses to the Red44 Organization to pay for bookmaker conferences and player fees.

## COUNT ONE
## Conspiracy to Operate an Illegal Gambling Business
## 18 U.S.C. § 371

22.    The Grand Jury adopts and incorporates the allegations contained in paragraphs 1-21 of this Second Superseding Indictment as if specifically set forth herein.

23.    From in or around January 2018 to in or around September 2022, the exact dates unknown to the Grand Jury, in the Northern District of Alabama, and elsewhere, Defendants,

**TIMOTHY J. PUGHSLEY, GARY L. RAPP, JR., MARK GIAQUINTO, MATTHEW D. VOORHEES, DAVID RICHARDS, JOSHUA GENTRUP, CHRISTOPHER BURDETTE, NATHANAEL BURDETTE, JONATHAN LIND, AND THOMAS V. ZITO**,

did voluntarily and knowingly conspire, combine, confederate, and agree together and with each other and with others, both known and unknown to the Grand Jury, to

conduct, finance, manage, supervise, direct, and own all or part of an illegal gambling business, to wit: an illegal gambling business that included the promotion of gambling activity in violation of Alabama law, to wit: *Alabama Code* §§ 13A-12-22, 23, 24, and/or 25, which also involved five or more persons who conducted, financed, managed, supervised, directed, and owned all or a part of said illegal gambling business, and which remained in substantially continuous operation for a period in excess of 30 days and had a gross revenue of $2,000.00 in any single day, in violation of Title 18, United States Code, Section 1955.

## OBJECT OF THE CONSPIRACY

24.    The object of the conspiracy was to enrich Defendants PUGHSLEY, RAPP, GIAQUINTO, VOORHEES, RICHARDS, GENTRUP, C. BURDETTE, N. BURDETTE, LIND, ZITO, and others by permitting, facilitating, and causing bettors to place wagers and bets using the Red44 website to obtain fees for use of the website and to generate a profit from gambling losses.

## MANNER AND MEANS OF THE CONSPIRACY

25.    It was part of the conspiracy that:

a.    Defendant PUGHSLEY paid Individual A for access to the Red44 online platform.

b.    The Red44 Organization utilized bank accounts, PayPal, Venmo, CashApp, GooglePay, cash, and virtual currency to move gambling proceeds between bookmakers and bettors.

6

c.      Defendants RAPP, GIAQUINTO, VOORHEES, RICHARDS, GENTRUP, C. BURDETTE, N. BURDETTE, LIND, and ZITO paid Defendant PUGHSLEY for access to the Red44 website and set up accounts for their down-line bettors so the bettors could place bets on sporting events through the Red44 website.

d.      Defendants PUGHSLEY, RAPP, GIAQUINTO, VOORHEES, RICHARDS, GENTRUP, C. BURDETTE, N. BURDETTE, LIND, and ZITO used the Red44 platform to communicate with each other via email, sometimes using email addresses with a domain ending in @red44, and also used the platform's messaging system.

e.      Defendants PUGHSLEY, RAPP, GIAQUINTO, VOORHEES, RICHARDS, GENTRUP, C. BURDETTE, N. BURDETTE, LIND, and ZITO arranged with their down-line bettors in person or arranged for others to meet with their bettors on their behalf to collect gambling winnings or to pay-off losses. These financial transactions typically occurred electronically, via wire transfer or applications like Venmo, GooglePay, Zelle, CashApp, or PayPal.

f.      Bookmakers in Defendant PUGHSLEY's down-line then made arrangements with Defendant PUGHSLEY to remit the percentage of their collected losses that Defendant PUGHSLEY was owed. These financial transactions typically occurred electronically, via wire transfer or applications like Venmo, GooglePay, Zelle, CashApp, or PayPal.

g.      Defendant PUGHSLEY hosted an annual training conference for bookmakers in the Red44 Organization, typically held in August, at various locations around the country. The conference occurred prior to college football season, which is the time period during which most wagers are placed. The Red44 Organization's fiscal year runs Super Bowl to Super Bowl.

Defendant PUGHSLEY pays for everything at the conference for attendees, except for the attending bookmakers' airfare to the host city. Previous conferences have been held in Costa Rica, New York, San Francisco, Chicago, Nashville, and Houston.

## OVERT ACTS

26.     In furtherance of the conspiracy, and to effect and conceal the existence of the conspiracy, the following overt acts were committed by the below-listed persons, in the Northern District of Alabama, and elsewhere:

a.     On or about February 26, 2019, a bookmaker in Defendant PUGHSLEY's down-line and Pughsley met in Birmingham, Alabama. The bookmaker paid Defendant PUGHSLEY $4,000 in cash, the percentage of the bookmaker's collected losses that Defendant PUGHSLEY was owed as the bookmaker's Senior Agent.

b.     On or about March 20, 2019, Defendant PUGHSLEY sent a text message to all of the bookmakers that were invited to the training conference notifying them of the date and location for the conference.

c.     On May 6, 2019, a bookmaker in Defendant PUGHSLEY's down-line met Defendant PUGHSLEY in Birmingham, Alabama, and paid Defendant PUGHSLEY $6,200 in cash, the percentage of the bookmaker's collected losses that Defendant PUGHSLEY was owed as the bookmaker's Senior Agent.

d.     In August 2019, Defendant PUGHSLEY hosted a training conference in Chicago, Illinois. Defendants RICHARDS, VOORHEES, LIND, GENTRUP, ZITO, N. BURDETTE, C. BURDETTE, GIAQUINTO, and RAPP all attended the conference.

8

e.      During the conference, Defendant PUGHSLEY encouraged the bookmakers in attendance to increase the number of bettors in their down-line in case the Government legalized sports betting.

f.      During the conference, Defendant PUGHSLEY compared illegal gambling to dealing marijuana, and acknowledged that federal law prohibited transferring funds associated with gambling wagers.

g.      During the conference, Defendant PUGHSLEY instructed the bookmakers on how to introduce themselves to potential bettors. Defendant PUGHSLEY remarked that he tells people that he is a "bookie," but also uses identifiers such as "customer service agent for a sports betting company" or "recruiter for a sports betting company."

h.      During the conference, Defendant PUGHSLEY remarked that if a potential bettor asked a bookmaker if sports betting was legal, the bookmaker should report that it was not yet legal but that many states were legalizing it.

i.      During the conference, Defendant PUGHSLEY instructed bookmakers to contact bettors every Tuesday at the same time, 10:00 AM, 2:00 PM, and 5:00 PM, until they heard back from the bettor and could discuss collecting losses.

j.      Defendant Pughsley then allowed the bookmakers in attendance to attend "break-out sessions" led by other Senior Agents, including Collections, led by Defendant C. BURDETTE, Money, led by Defendant VOORHEES, Texting top 25, led by Defendant GENTRUP, Red44 website-player side, led by Defendant GIAQUINTO, Red44 website-agent side, led by Defendant RICHARDS, Betting Scripts, led by Defendant RAPP, and Talk to your players, led by Defendant N. BURDETTE.

k.      During a session, Defendant VOORHEES reported that he managed 27 sub-agents and still had a few individual bettors in his down-line.

l.      Defendant GENTRUP provided guidance during the conference on offering free play to bettors and warned younger bookmakers to discuss with their Senior Agent before they offered free play.

m.      During a session, Defendant C. BURDETTE reported that "collecting" in the Red44 Organization meant vetting each bettor and setting limits low, especially at the start. Defendant C. BURDETTE reported that bettors must be paid in full on Tuesday, and if the bookmaker did not have the money to contact their Senior Agent. Defendant C. BURDETTE remarked that he uses excel to keep notes on each of the bettors in his down-line. C. BURDETTE also instructed that when bookmakers were tracking payments on Red44, they were to note how a payment was completed, *i.e.* cash, VM for Venmo, PP for PayPal.

n.      Defendant RICHARDS provided instruction during a session on managing bettors' performance through the Red44 site. Defendant RICHARDS explained the different tabs on the website and how to track a bettors' earnings, losses, and that you could check to see if different bettors were using the same IP address.

o.      During the conference, Defendant PUGHSLEY provided statistics for the Red44 organization during its prior fiscal year. They included 15,189 bettors, 7,800+ bettors in one week during football season, $46.85 average wager per bettor, and $983.00 average loss per bettor. Based on these numbers, the Red44 organization earned a gross profit of $14,930,787.00. The excise tax owed to the IRS, or two percent of total wagers placed, would be $6,882,460.46.

p.      During the conference, Defendant PUGHSLEY passed out blue t-shirts to everyone with RED44 written on the shirt. Defendant PUGHSLEY remarked that the shirts were a good marketing tool to generate conversations about Red44.

q.      During the conference, Defendant PUGHSLEY discussed the importance of paying taxes to the IRS. Defendant PUGHSLEY explained that he interviewed several Certified Public Accountants and asked them how they would file his return. One accountant explained that he needed to obtain a tax stamp. Another reported that he should file a Schedule C for a profit and loss of a business. He chose the accountant that did not recommend the tax stamp, but rather filed recommended that he file his return utilizing a Schedule C as a though he ran a legitimate business.

r.      During the conference, several agents explained banking issues and that "Know Your Customer" laws meant the bookmakers should be careful about where they deposited funds obtained from their management of the Red44 Organization.

s.      On November 28, 2019, a bookmaker in Defendant PUGHSLEY's down-line met Defendant PUGHSLEY in Birmingham, Alabama, and paid Defendant PUGHSLEY $2,000 in cash—the percentage of the bookmaker's collected losses that Defendant PUGHSLEY was owed as the bookmaker's Senior Agent.

t.      On December 5, 2019, a bookmaker in Defendant PUGHSLEY's downline paid Defendant PUGHSLEY $2,000 using another bookmaker's Venmo account, representing the percentage of the bookmaker's collected losses that Defendant PUGHSLEY was owed as the bookmaker's Senior Agent. This payment was sent under a nominee name, worktrucksllc@gmail.com. Defendant PUGHSLEY also met with this

11

bookmaker in person in Birmingham to provide instruction on the agent-side of the Red44 website, and trained the bookmaker on how payments to Defendant PUGHSLEY were tracked inside the website.

u.    In August 2020, Pughsley held a training conference for bookmakers in the Red44 Organization in Nashville, Tennessee. Defendants GIAQUINTO, GENTRUP, LIND, VOORHEES, and RICHARDS attended the conference.

v.    During this conference, Defendant PUGHSLEY provided the statistics for the Red44 Organization's prior fiscal year. He reported the organization had 24,570 bettors, $300,000,000 in wagers, an average wager of $38.10 per bettor, and an average loss of $1,009 per bettor. This would mean the Red44 Organization had income of approximately $24,791,130.00, and the excise taxes owed to the IRS would total $6,000,000.

w.    During the conference, Defendant PUGHSLEY noted that Defendant GENTRUP had 374 individual bettors in 2019, with a profit of $551,000 and wagers totaling $7,200,000 placed by bettors.

x.    During the conference, Defendant PUGHSLEY noted that Defendant RICHARDS had 361 individual bettors in 2019, with a profit of $718,000 and wagers totaling $8,400,000 placed by bettors.

y.    During the conference, Defendant PUGHSLEY explained that banking was an ongoing issue for the Red44 Organization, and that the banks were using algorithms to detect illegal activity.

z.    During the conference, Defendant PUGHSLEY explained that he had developed a relationship with a banker at a regional bank in Birmingham, Alabama, that would allow accounts to be opened. Defendant PUGHSLEY passed out account opening sheets and provided instruction to the bookmakers regarding how to fill out the information required to open the

account. Defendant PUGHSLEY specifically instructed the bookmakers not to list Red44 as their employer, but to put "self-employed" on the paperwork.

aa.    During the conference, Defendant PUGHSLEY again discussed taxes with the bookmakers in attendance. Pughsley instructed that the Red44 Organization did not issue gambling forms for tax purposes, like 1099s, to their bettors. Despite this, Defendant PUGHSLEY reported that bookmakers should begin paying taxes once $30,000 was made but to use a Schedule C, profit/loss of a business, to report earnings.

bb.    After the Nashville conference, but before September 8, 2020, a bookmaker gave Defendant PUGHSLEY $1,500 in cash to open an account at a regional bank in Birmingham. The bookmaker provided the account opening paperwork to Defendant PUGHSLEY, and Defendant PUGHSLEY took a photo of the bookmaker's driver license to facilitate opening the account.

cc.    In August 2021, Defendant PUGHSLEY hosted a conference in Houston, Texas. Defendants GENTRUP, VOORHEES, RICHARDS, RAPP, and GIAQUINTO attended the conference.

dd.    During the conference, Defendant PUGHSLEY provided the statistics for the Red44 Organization's prior fiscal year. Defendant PUGHSLEY reported the organization had 32,384 individual bettors, $352,000,000 in total wagers placed, an average wager of $41.77, and an average loss of $1,116.00 per bettor. This meant the Red44 organization had income totaling $36,028,944 in the prior fiscal year. The excise tax due to the IRS, or two percent of wagers, totals $7,040,000.

ee.    During the conference, Defendant PUGHSLEY reported that Defendant RAPP 's top bettor placed $2,400,000 in wagers in 2,000 distinct bets placed, that Defendant VOORHEES's top bettor placed $5,600,000 in

wagers with 3,300 distinct bets placed. Defendant PUGHSLEY reported his top bettor placed $11,400,000 in wagers with 8,943 distinct wagers placed.

ff.    During this Seminar, breakout sessions were held. Defendant GIAQUINTO led a session regarding Phone Scripts. Defendant RICHARDS led a session regarding the Red44 agent-side. Defendant RAPP led a player management session, and Defendant GENTRUP led a collections session.

gg.    Defendant GENTRUP remarked that the Red44 Organization was "not in the business of breaking kneecaps" to collect, but that it used intimidation over the phone to ensure collection from bettors.

hh.    Another bookmaker provided instruction during a session on collection activity. Attendees were instructed that when bookmakers conducted transactions on Venmo, the bettor should be a "friend." Similarly, GooglePay worked better friend-to-friend. Bookmakers were instructed to include a description of the transaction when using Venmo that did not include words like "sports," "you won this time," or "I can't pick a winner."

ii.    On November 4, 2021, Defendant PUGHSLEY met a bookmaker in his down-line in Birmingham, Alabama, to retrieve cash as the percentage of the bookmaker's collected losses from gambling wagers placed by bettors.

jj.    On November 19, 2021, Defendant PUGHSLEY met Defendant ZITO at Saltgrass Restaurant on Highway 280 in Birmingham, Alabama, and counted cash from Defendant ZITO in the passenger seat of Defendant ZITO's truck. Defendant ZITO is a Senior Agent in the Red44 Organization and a bookmaker in Defendant PUGHSLEY's down-line.

kk.    On December 10, 2021, Defendant PUGHSLEY held a private party at Mexicalli Blues, a part of the Ferus Brewery entertainment complex in Trussville, Alabama. Bookmakers in the Red44 Organization were invited

to attend the party. During the party, a bookmaker observed Defendant RAPP counting an approximately two-inch stack of $100 bills in the bathroom, and was later observed placing an envelope of cash into his girlfriend's purse. Bookmakers in Defendant RAPP 's down-line attended the party.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO
### Tax Evasion
### 26 U.S.C. § 7201

30.     The Grand Jury adopts and incorporates the allegations contained in paragraphs and subparagraphs 1-21 and Count One of this Second Superseding Indictment as if specifically set forth herein.

31.     During the time period beginning January 1, 2018, and ending December 31, 2018, in the Northern District of Alabama, Southern Division, and elsewhere, Defendant,

**TIMOTHY J. PUGHSLEY**,

received taxable wagers from bettors through the Red44 Organization, and Defendant PUGHSLEY, well-knowing and believing the foregoing facts, did willfully attempt to evade and defeat the wagering excise tax due and owing by failing to register with the IRS as a Bookmaker, filing a Form 11-C, and paying a pro-rated fee of $500,

All in violation of Title 26, United States Code, Section 7201.

15

## COUNT THREE
### Tax Evasion
### 26 U.S.C. § 7201

32.    The Grand Jury adopts and incorporates the allegations contained in paragraphs and subparagraphs 1-21 and Count One of this Second Superseding Indictment as if specifically set forth herein.

33.    During the time period beginning January 1, 2019, and ending December 31, 2019, in the Northern District of Alabama, Southern Division, and elsewhere, Defendant,

### TIMOTHY J. PUGHSLEY,

received taxable wagers from bettors through the Red44 Organization, and Defendant PUGHSLEY, well-knowing and believing the foregoing facts, did willfully attempt to evade and defeat the wagering excise tax due and owing by failing to register with the IRS as a Bookmaker, filing a Form 11-C, and paying a pro-rated fee of $500,

All in violation of Title 26, United States Code, Section 7201.

## COUNT FOUR
### Tax Evasion
### 26 U.S.C. § 7201

34.    The Grand Jury adopts and incorporates the allegations contained in paragraphs and subparagraphs 1-21 and Count One of this Second Superseding Indictment as if specifically set forth herein.

35.     During the time period beginning January 1, 2020, and ending December 31, 2020, in the Northern District of Alabama, Southern Division, and elsewhere, Defendant,

**TIMOTHY J. PUGHSLEY**,

received taxable wagers from bettors through the Red44 Organization, and Defendant PUGHSLEY, well-knowing and believing the foregoing facts, did willfully attempt to evade and defeat the wagering excise tax due and owing by failing to register with the IRS as a Bookmaker, filing a Form 11-C, and paying a pro-rated fee of $500,

All in violation of Title 26, United States Code, Section 7201.

## COUNTS FIVE THROUGH THIRTY-EIGHT
### Tax Evasion
### 26 U.S.C. § 7201

36.     The Grand Jury adopts and incorporates the allegations contained in paragraphs and subparagraphs 1-21 and Count One of this Second Superseding Indictment as if specifically set forth herein.

37.     During the time period reflected in the table below, in the Northern District of Alabama, Southern Division, and elsewhere, Defendant,

**TIMOTHY J. PUGHSLEY**,

received taxable wagers from bettors through the Red44 Organization, and Defendant PUGHSLEY, well-knowing and believing the foregoing facts, did

willfully attempt to evade and defeat the wagering excise tax due and owing by Defendant PUGHSLEY, to the United States of America for said time period, by failing to file any wagering excise return on or before the last day of the month following the month the wagers were accepted, as required by law, to any proper officer of the IRS, and by failing to pay to the IRS said wagering excise tax:

| COUNT | TIME PERIOD | REPORTING MONTH/YEAR | TYPE OF RETURN |
|---|---|---|---|
| 5 | 3/1/2018-3/31/2018 | February 2018 | Form 730 |
| 6 | 4/1/2018-4/30/2018 | March 2018 | Form 730 |
| 7 | 5/1/2018-5/31/2018 | April 2018 | Form 730 |
| 8 | 6/1/2018-6/30/2018 | May 2018 | Form 730 |
| 9 | 7/1/2018-7/31/2018 | June 2018 | Form 730 |
| 10 | 8/1/2018-8/31/2018 | July 2018 | Form 730 |
| 11 | 9/1/2018-9/30/2018 | August 2018 | Form 730 |
| 12 | 10/1/2018-10/31/2018 | September 2018 | Form 730 |
| 13 | 11/1/2018-11/30/2018 | October 2018 | Form 730 |
| 14 | 12/1/2018-12/31/2019 | November 2018 | Form 730 |
| 15 | 1/1/2019-1/31/2019 | December 2018 | Form 730 |
| 16 | 2/1/2019-2/28/2019 | January 2019 | Form 730 |
| 17 | 3/1/2019-3/31/2019 | February 2019 | Form 730 |

| 18 | 4/1/2019-4/30/2019 | March 2019 | Form 730 |
| 19 | 5/1/2019-5/31/2019 | April 2019 | Form 730 |
| 20 | 6/1/2019-6/30/2019 | May 2019 | Form 730 |
| 21 | 7/1/2019-7/31/2019 | June 2019 | Form 730 |
| 22 | 8/1/2019-8/31/2019 | July 2019 | Form 730 |
| 23 | 9/1/2019-9/30/2019 | August 2019 | Form 730 |
| 24 | 10/1/2019-10/31/2019 | September 2019 | Form 730 |
| 25 | 11/1/2019-11/30/2019 | October 2019 | Form 730 |
| 26 | 12/1/2019-12/31/2019 | November 2019 | Form 730 |
| 27 | 1/1/2020-1/31/2020 | December 2019 | Form 730 |
| 28 | 2/1/2020-2/28/2020 | January 2020 | Form 730 |
| 29 | 3/1/2020-3/31/2020 | February 2020 | Form 730 |
| 30 | 4/1/2020-4/30/2020 | March 2020 | Form 730 |
| 31 | 5/1/2020-5/31/2020 | April 2020 | Form 730 |
| 32 | 6/1/2020-6/30/2020 | May 2020 | Form 730 |
| 33 | 7/1/2020-7/31/2020 | June 2020 | Form 730 |
| 34 | 8/1/2020-8/31/2020 | July 2020 | Form 730 |
| 35 | 9/1/2020-9/30/2020 | August 2020 | Form 730 |
| 36 | 10/1/2020-10/31/2020 | September 2020 | Form 730 |

| 37 | 11/1/2020-11/30/2020 | October 2020 | Form 730 |
| 38 | 12/1/2020-12/31/2020 | November 2020 | Form 730 |
| 39 | 1/1/2021-1/31/2021 | December 2020 | Form 730 |

All in violation of Title 26, United States Code, Section 7201.

## **COUNTS FORTY THROUGH SIXTY-SIX**
### **Tax Evasion**
### **26 U.S.C. § 7201**

38.    The Grand Jury adopts and incorporates the allegations contained in paragraphs and subparagraphs 1-21 and Count One of this Second Superseding Indictment as if specifically set forth herein.

39.    During the time period reflected in the table below, in the Northern District of Alabama, Southern Division, the named Defendant received taxable wagers from bettors through the Red44 Organization, and each named Defendant, for each Count, well-knowing and believing the foregoing facts, did willfully attempt to evade and defeat the wagering excise tax due and owing by failing to register with the IRS as a Bookmaker, filing a Form 11-C, and paying a pro-rated fee of $500:

| **COUNT** | **DEFENDANT** | **FILING YEAR** | **AMOUNT OWED** |
| --- | --- | --- | --- |
| 40 | RAPP | 2018 | $500 |
| 41 | RAPP | 2019 | $500 |

| 42 | RAPP | 2020 | $500 |
| 43 | GIAQUINTO | 2018 | $500 |
| 44 | GIAQUINTO | 2019 | $500 |
| 45 | GIAQUINTO | 2020 | $500 |
| 46 | VOORHEES | 2018 | $500 |
| 47 | VOORHEES | 2019 | $500 |
| 48 | VOORHEES | 2020 | $500 |
| 49 | RICHARDS | 2018 | $500 |
| 50 | RICHARDS | 2019 | $500 |
| 51 | RICHARDS | 2020 | $500 |
| 52 | GENTRUP | 2018 | $500 |
| 53 | GENTRUP | 2019 | $500 |
| 54 | GENTRUP | 2020 | $500 |
| 55 | C. BURDETTE | 2018 | $500 |
| 56 | C. BURDETTE | 2019 | $500 |
| 57 | C. BURDETTE | 2020 | $500 |
| 58 | N. BURDETTE | 2018 | $500 |
| 59 | N. BURDETTE | 2019 | $500 |
| 60 | N. BURDETTE | 2020 | $500 |

| 61 | LIND | 2018 | $500 |
|----|------|------|------|
| 62 | LIND | 2019 | $500 |
| 63 | LIND | 2020 | $500 |
| 64 | ZITO | 2018 | $500 |
| 65 | ZITO | 2019 | $500 |
| 66 | ZITO | 2020 | $500 |

All in violation of Title 26, United States Code, Section 7201.

## COUNTS SIXTY-SEVEN THROUGH NINETY-THREE
### Tax Evasion
### 26 U.S.C. § 7201

40.     The Grand Jury adopts and incorporates the allegations contained in paragraphs and subparagraphs 1-21 and Count One of this Second Superseding Indictment as if specifically set forth herein.

41.     During the time period reflected in the table below, in the Northern District of Alabama, Southern Division, and elsewhere, each named Defendant received taxable wagers from bettors through the Red44 Organization, and each named Defendant, well-knowing and believing the foregoing facts, did willfully attempt to evade and defeat the wagering excise tax due and owing by said Defendant, for each Count, to the United States of America for said time period, by failing to file any wagering excise return on or before the last day of the month

following the month the wagers were accepted, as required by law, to any proper

officer of the IRS, and by failing to pay to the IRS said wagering excise tax:

| COUNT | DEFENDANT | TIME PERIOD | TYPE OF RETURN |
|---|---|---|---|
| 67 | RAPP | November 2018 | Form 730 |
| 68 | RAPP | November 2019 | Form 730 |
| 69 | RAPP | November 2021 | Form 730 |
| 70 | GIAQUINTO | November 2018 | Form 730 |
| 71 | GIAQUINTO | November 2019 | Form 730 |
| 72 | GIAQUINTO | November 2020 | Form 730 |
| 73 | VOORHEES | November 2018 | Form 730 |
| 74 | VOORHEES | November 2019 | Form 730 |
| 75 | VOORHEES | November 2020 | Form 730 |
| 76 | RICHARDS | November 2018 | Form 730 |
| 77 | RICHARDS | November 2019 | Form 730 |
| 78 | RICHARDS | November 2020 | Form 730 |
| 79 | GENTRUP | November 2018 | Form 730 |
| 80 | GENTRUP | November 2019 | Form 730 |
| 81 | GENTRUP | November 2020 | Form 730 |
| 82 | C. BURDETTE | November 2018 | Form 730 |

| 83 | C. BURDETTE | November 2019 | Form 730 |
| 84 | C. BURDETTE | November 2020 | Form 730 |
| 85 | N. BURDETTE | November 2018 | Form 730 |
| 86 | N. BURDETTE | November 2019 | Form 730 |
| 87 | N. BURDETTE | November 2020 | Form 730 |
| 88 | LIND | November 2018 | Form 730 |
| 89 | LIND | November 2019 | Form 730 |
| 90 | LIND | November 2020 | Form 730 |
| 91 | ZITO | November 2018 | Form 730 |
| 92 | ZITO | November 2019 | Form 730 |
| 93 | ZITO | November 2020 | Form 730 |

All in violation of Title 26, United States Code, Section 7201.

## COUNT NINETY-FOUR
### Money Laundering Conspiracy
### 18 U.S.C. § 1956(h)

### INTRODUCTION

42.    The Grand Jury adopts and incorporates the allegations contained in paragraphs and subparagraphs 1-21 and Count One of this Second Superseding Indictment as if specifically set forth herein.

43.    Since at least January 2018, Defendants PUGHSLEY, RAPP, GIAQUINTO, VOORHEES, RICHARDS, DONALDSON, GENTRUP, C. BURDETTE, N. BURDETTE, LIND, and ZITO have received large amounts of proceeds from an illegal gambling business that was owned, operated, and managed in the Northern District of Alabama.

## THE CONSPIRACY

44.    Beginning no later than January 1, 2018, and continuing up to and including February 2022, in the Northern District of Alabama, and elsewhere, Defendants,

**TIMOTHY J. PUGHSLEY, GARY L. RAPP, JR., MARK GIAQUINTO, MATTHEW D. VOORHEES, DAVID RICHARDS, CHRISTOPHER DONALDSON, JOSHUA GENTRUP, CHRISTOPHER BURDETTE, NATHANAEL BURDETTE, JONATHAN LIND, AND THOMAS V. ZITO,**

did knowingly and willfully conspire, confederate, and agree with each other and with other persons known and unknown to the Grand Jury to commit offenses against the United States in violation of Title 18, United States Code, Sections 1956 and 1957, that is:

(a) to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce that involved the proceeds of specified unlawful activity, that is, the operation of an illegal gambling business in violation of Title 18, United States Code, Section 1955, and while conducting and attempting to conduct such transactions knew that the property involved in the financial

25

transaction represented the proceeds of some form of unlawful activity, with the intent to promote the carrying on of said specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i); and

(b)      to knowingly engage and attempt to engage in monetary transactions by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, the operation of an illegal gambling business in violation of Title 18, United States Code, Section 1955, in violation of Title 18, United States Code, Section 1957.

All in violation of Title 18, United States Code, Section 1956(h).

### MANNER AND MEANS BY WHICH THE CONSPIRACY WAS CARRIED OUT

45.      The manner and means used to accomplish the objectives of the conspiracy included, among others, the following:

a.      It was part of the conspiracy that Defendants PUGHSLEY, RAPP, GIAQUINTO, VOORHEES, RICHARDS, DONALDSON, GENTRUP, C. BURDETTE, N. BURDETTE, LIND, and ZITO used the Red44 website to manage amounts of bettors' wins, losses, and payments made. Defendants further used the Red44 website to track percentages owed to Defendant PUGHSLEY and other Senior Agents within a bookmaker's upstream.

b.      Defendants utilized payment platforms like Zelle, GooglePay, CashApp, PayPal, and Venmo to transmit funds won and lost in the illegal

gambling business. When remitting payments, Bettors were instructed to avoid using descriptions that would identify payments as associated with illegal gambling activity.

c.    At regular intervals, Defendants communicated with each other and with their bettors using a messaging system run through the Red44 website, and sometimes used email addresses with domains ending in @red44.

d.    At regular intervals, Defendants RAPP, GIAQUINTO, VOORHEES, RICHARDS, DONALDSON, GENTRUP, C. BURDETTE, N. BURDETTE, LIND, and ZITO delivered and caused to be delivered, currency and other monetary payments to Defendant PUGHSLEY, which represented payments of gambling losses for bettors.

e.    Thereafter, these payments were used by Defendant PUGHSLEY to pay Individual A for access to the Red44 website and to pay expenses of the organization by means of financial transactions that included credit card payments for food, travel, bookmaker conferences, hotels, and other expenses.

f.    Defendant Pughsley utilized a contact at a regional bank in Birmingham, Alabama, to open bank accounts for Defendants VOORHEES, RICHARDS, GENTRUP, C. BURDETTE, and N. BURDETTE. Defendant PUGHSLEY instructed the bookmakers to list "self-employed" on the bank account opening paperwork to avoid their association with the Red44 illegal gambling organization.

g.    Defendant PUGHSLEY utilized ACH privileges with the regional bank in Birmingham to receive and withdraw funds from other bank accounts to process transactions within the Red44 Organization.

h.      Defendants discussed the use of multiple accounts with Venmo and other digital currency platforms, with different primary email accounts and cell phone numbers, to avoid detection of their activities.

i.      Defendants avoided using whole or round numbers when transferring funds in and out of Venmo and other digital currency platforms to avoid detection of their activities.

j.      Defendant PUGHSLEY utilized accounts at 21 different financial institutions from 2014 to 2021 where proceeds of the illegal gambling business were deposited or withdrawn.

k.      Records from 2014 through 2021 for one of PUGHSLEY's bank accounts ("BOA 7875") reflected deposits of $353,137.15 from one individual, and 62 deposits totaling $165,056.74 from another. BOA 7875 reflected 27 deposits of cash totaling $59,025.66. Defendant RAPP made 11 deposits totaling $79,523.15 into this account. Defendant GIAQUINTO made 81 deposits totaling $516,750 into this account. Defendant PUGHSLEY made 28 transfer deposits into BOA 7875 totaling $653,298.00.

l.      Defendants VOORHEES and PUGHSLEY opened a joint account at a financial institution ("BOA 0158") where deposits of illegal gambling activity were made from January 2019 through December 2021. Funds totaling $1,077,049.07 were transferred or deposited into this account.

m.     Defendant PUGHSLEY opened a savings account at a financial institution ("BOA 9969") where proceeds of illegal gambling activity were deposited. Defendant GIAQUINTO made 16 deposits totaling $221,000.00 into BOA 9969 from December 2017 through December 2021. Defendant PUGHSLEY transferred $615,823.00 into this account.

n.      Defendant PUGHSLEY maintained another account at a financial institution ("BBT 2077") where proceeds of illegal gambling activity

were deposited from August 2015 through December 2021. Defendant LIND made two deposits totaling $101,115.30 into BBT 2077.

o.    Defendant PUGHSLEY maintained another account at a large national bank where he deposited proceeds of illegal gambling activity ("BBVA 4713"). Defendant PUGHSLEY made 129 cash deposits totaling over $65,000 into this account. Defendant RAPP made five deposits totaling $111,000 into BBVA 4713. An account belonging to Defendant N. BURDETTE's wife made 14 deposits of $111,100.00 into BBVA 4713. Defendant N. BURDETTE made 11 deposits totaling over $100,000 into BBVA 4713. Defendant PUGHSLEY deposited $6,932,987.98 into BBVA 4713 via check, cashier's check, and wire transfer.

p.    Defendant PUGHSLEY maintained another account at a large national bank where he deposited proceeds of illegal gambling activity ("BBVA 1882"). From March 2018 through June 2019, Defendant PUGHSLEY transferred $5,196,500.00 into this account via check, cashier's check, and wire transfer.

q.    From November 2020 through October 2021, Defendant PUGHSLEY deposited proceeds of illegal gambling activity via checks written by Defendant GENTRUP totaling well over $150,000 into his accounts.

r.    From 2018 through 2021, Defendant DONALDSON deposited approximately $459,000 in illegal gambling proceeds from Defendant GENTRUP, a bookmaker in his down-line in the Red44 Organization.

s.    Prior to 2021, Defendant PUGHSLEY utilized financial accounts belonging to his ex-wife to deposit proceeds of illegal gambling activity.

t.    Defendant PUGHSLEY utilized a money market account at a large financial institution ("FI 6919") to deposit nearly $7,000,000 from June 2018 to November 2021, primarily through transfers from other financial accounts various financial institutions.

u.    Defendant PUGHSLEY used an individual account in his ex-wife's name ("FI 6192") to deposit or transfer illegal gambling proceeds exceeding $2,000,000 from September 2019 through October 2021. Approximately half of these transfers were from other accounts maintained by Defendant PUGHSLEY in his own name.

v.    Defendant PUGHSLEY used a joint account owned with his son ("Fifth Third 0944") to make 78 deposits of illegal gambling proceeds from Venmo totaling nearly $200,000 over a 30-month period from March 2019 through November 2021.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNTS NINETY-FIVE through ONE HUNDRED THREE
### Money Laundering
### 18 U.S.C. § 1956(a)(1)(A)(i) and 18 U.S.C. § 2

46.    The Grand Jury adopts and incorporates the allegations contained in paragraphs 1-21, Count One, and Count Ninety-Four of this Second Superseding Indictment as if specifically set forth herein.

47.    On or about the dates set forth in the table below, for each Count, in the Northern District of Alabama, and elsewhere, each named Defendant did knowingly conduct, attempt to conduct, and cause to be conducted, financial transactions affecting interstate commerce, that is, the transaction described below, from the

financial institutions listed below, to an account owned or controlled by Defendant

PUGHSLEY:

| COUNT | DEFENDANT | DATE | TRANSACTION | AMOUNT |
|---|---|---|---|---|
| 95 | GIAQUINTO | 2/10/2020 | Online Banking Transfer Conf# d6d734394; | $10,000 |
| 96 | RAPP | 11/9/2020 | Wire Transfer from Triumph Bank in Memphis, TN | $327,310.41 |
| 97 | VOORHEES | 8/9/2021 | Check made payable to Defendant PUGHSLEY | $50,000 |
| 98 | RICHARDS | 7/6/2021 | Internal Wire Transfer | $90,000 |
| 99 | GENTRUP | 10/8/2021 | Check made payable to Defendant PUGHSLEY | $12,500 |
| 100 | N. BURDETTE | 1/21/21 | Internal Wire Transfer | $8,986 |
| 101 | C. BURDETTE | 1/18/2019 | Quickpay With Zelle Payment from Christopher Burdette Wfct05P4W4Xf | $2,000 |
| 102 | LIND | 3/5/2019 | Cashier's Check made payable to Defendant PUGHSLEY | $71,115.30 |
| 103 | ZITO | 5/10/2021 | Cashier's Check made payable to Defendant PUGHSLEY | $8,200 |

that involved the proceeds of a specified unlawful activity, specifically the operation

of an illegal gambling business in violation of Title 18, United States Code, Section

1955, knowing that the funds involved in the financial transaction represented the

proceeds of some form of unlawful activity and with the intent to promote the

carrying on of said specified unlawful activity,

All in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and

Title 18, United States Code, Section 2.

## COUNTS ONE HUNDRED FOUR through ONE HUNDRED SIX
### Money Laundering
### 18 U.S.C. § 1956(a)(1)(A)(i) and 18 U.S.C. § 2

48.    The Grand Jury adopts and incorporates the allegations contained in paragraphs 1-21, Count One, and Count Ninety-Four of this Second Superseding Indictment as if specifically set forth herein.

49.    On or about the dates set forth in the table below, for each Count, in the Northern District of Alabama, and elsewhere, Defendant,

### TIMOTHY J. PUGHSLEY,

did conduct and attempt to conduct the financial transactions set forth below, in and affecting interstate commerce, which transactions involved the proceeds of specified unlawful activity, that is, the operation of an illegal gambling business in violation of Title 18, United States Code, Section 1955, knowing that the funds or property involved in the financial transactions represented the proceeds of some form of unlawful activity, and with the intent to promote the carrying on of the said specified unlawful activity:

| COUNT | DATE | TRANSACTION |
|-------|------|-------------|
| 104 | 3/19/2019 | Online wire transfer from Bank of America Account ending in 0158 in the amount of $15,500 to Bank of America Account ending in 9969 |
| 105 | 2/12/2020 | Online transfer from JP Morgan Chase Account ending in 4589 in the amount of $75,000 to Wells Fargo Account ending in 1596 |
| 106 | 11/30/2021 | Deposited Check drawn on Bank of America account ending in 7875 in the amount of $92,000 into FirstBank account |

All in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i) and

Title 18, United States Code, Section 2.

## COUNTS ONE HUNDRED SEVEN through ONE HUNDRED FOURTEEN
### Engaging in Illegal Monetary Transactions
### 18 U.S.C. § 1957 and 18 U.S.C. § 2

50.    The Grand Jury adopts and incorporates the allegations contained in

paragraphs and subparagraphs 1-21, Count One, and Count Ninety-Four as if

specifically set forth herein.

51.    On or about the dates set forth below, for each Count, in the Northern

District of Alabama, and elsewhere, each named Defendant, did unlawfully and

knowingly conduct and attempt to conduct a monetary transaction in criminally

derived funds, by, through, or to a financial institution, affecting interstate or foreign

commerce, in criminally derived property of a value greater than $10,000, that is,

the withdrawal, deposit or transfer of funds from and to financial institutions, such

property having been derived from specified unlawful activity, that is, the operation

of an illegal gambling business:

| COUNT | DEFENDANT | DATE | MONETARY TRANSACTION |
|-------|-----------|------|----------------------|
| 107 | PUGHSLEY | 9/27/2017 | Check Number 6519 drawn from BBVA account ending 4713 in the amount of $95,451.42 made payable to Jack Ingram Motors |
| 108 | RAPP | 4/7/2017 | Check Number 1543 in the amount of $30,000 made payable to Defendant PUGHSLEY and deposited into Pughsley's Wells Fargo Account |

| 109 | GIAQUINTO | 1/30/2019 | Official Check #1448212128 drawn from BOA Account ending in 9772 in the amount of $14,950 made payable to Goldstein, Swank & Gordon for the purchase of a watch |
| 110 | VOORHEES | 9/4/2020 | Check Number 1345 in the amount of $25,000 made payable to Defendant PUGHSLEY |
| 111 | RICHARDS | 4/26/2017 | Check in the amount of $25,000 made payable to Defendant PUGHSLEY |
| 112 | GENTRUP | 4/14/2019 | Check Number 1006 in the amount of $30,000 made payable to Defendant PUGHSLEY |
| 113 | N. BURDETTE | 2/28/2021 | Check Number 140 in the amount of $25,000 made payable to J.B. for the purchase of a Cadillac Escalade |
| 114 | LIND | 3/7/2019 | Cashier's Check Number 7386681 in the amount of $30,000 made payable to Defendant PUGHSLEY |

All in violation of Title 18, United States Code, Section 1957 and Title 18, United States Code, Section 2.

## NOTICE OF CRIMINAL FORFEITURE
## FIRST NOTICE OF FORFEITURE

1.      The allegations contained in Count One of this Second Superseding Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2.      Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), upon conviction of the offense charged in Count One of this Second Superseding Indictment, Defendants,

**TIMOTHY J. PUGHSLEY, GARY L. RAPP, JR., MARK GIAQUINTO, MATTHEW D. VOORHEES, DAVID RICHARDS, CHRISTOPHER DONALDSON, JOSHUA GENTRUP, CHRISTOPHER BURDETTE, NATHANAEL BURDETTE, JONATHAN LIND, AND THOMAS V. ZITO**,

shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to said violation. The property to be forfeited includes, but is not limited to, the following:

a.    **THE CONTENTS OF THE FOLLOWING FINANCIAL ACCOUNTS:**

| Name on Account | Financial Institution | Account No. |
|---|---|---|
| Giaquinto Properties / Mark Giaquinto | Bank of America | -4133 |
| GSC Group Inc / Mark Giaquinto | Bank of America | -1121 |
| GSC Group Inc / Mark Giaquinto | Bank of America | -7045 |
| Jonathan D. Lind | Regions Bank | -5076 |
| Jonathan Lind | PNC Bank | -0952 |
| Jonathan Lind | Truist Bank | -1423 |
| Lind Retail Group LLC | PNC Bank | -1162 |
| Mark A. Giaquinto | Bank of America | -0641 |
| Mark A. Giaquinto | National Financial Services LLC (Fidelity / Commonwealth Financial Network) | -5201 *Up to $330,000 |
| Mark A. Giaquinto | National Financial Services LLC (Fidelity / Commonwealth Financial Network) | -5631 *Up to $1,402,500 |
| Mark A. Giaquinto | Worcester Fire Dept. Credit Union | -3403 *Up to $2,181,152.46 |
| Timothy J Pughsley | Avadian Credit Union | -7720 |
| Tim Pughsley | Bank of America | -7875 |
| Tim J Pughsley | Bank of America | -7782 |

| Tim J Pughsley | Bank of America | -9969 |
|---|---|---|
| Matthew D Voorhees, Tim J Pughsley | Bank of America | -0158 |
| Tim Pughsley | BB&T | -2077 |
| Megan Pughsley | PNC Bank (fka BBVA Compass) | -2315 (fka -0183) |
| Megan Pughsley | PNC Bank (fka BBVA Compass) | -8933 (fka -1240) |
| Timothy James Pughsley | Bryant Bank | -9111 |
| Timothy Pughsley | Bitcoin | XGWFE |
| Timothy Pughsley | Bitcoin | X5mfw |
| Joshua Gentrup | Truist Bank | -1852 |
| Eighty-Five South, LLC/Joshua Gentrup | United Bank | -4797 |
| Joshua Gentrup | Wells Fargo | -3192 *Up o $136,663 |
| Joshua Gentrup | JP Morgan Chase | -6516 *Up to $699,105.03 |
| Joshua Gentrup | Bank of America | -6896 |
| Kirsten Milsap | JP Morgan Chase | -2085 |
| Timothy James Pughsley | Citibank | -8775 |
| Tim Pughsley | Fidelity | -6919 |
| Tim Pughsley | Fidelity | -7846 |
| Tim Pughsley | Fidelity | -4669 |
| Megan Pughsley | Fidelity | -4992 |
| Megan M Pughsley | Fidelity (MML Investors Services) | -7787 |
| Devin Taylor Pughsley OR Timothy J Pughsley | Fifth Third Bank | -0944 |
| Timothy J Pughsley | FirstBank | -3022 |
| Tim Pughsley | Goldman Sachs | -7749 |
| Tim Pughsley | Goldman Sachs | -4477 |
| Megan Pughsley | Goldman Sachs | -5287 |
| Tim Pughsley | SunTrust (Truist) | -3189 |
| Tim Pughsley | Synchrony Bank | -0466 |
| Tim Pughsley | TD Ameritrade (Scottrade) | -4768 (-7326) |
| Tim J Pughsley | TD Ameritrade (Scottrade) | -5267 (-7921) |

36

| | | |
|---|---|---|
| Tim J Pughsley | USAA | -5809 |
| Tim J Pughsley | USAA | -5817 |
| Megan Pughsley | USAA | -4768 |
| Tim Pughsley | Wells Fargo | -8243 |
| Tim Pughsley | Wells Fargo | -1072 |
| Tim Pughsley | Wells Fargo | -1596 |
| Megan McWaters Pughsley | Wells Fargo | -9863 |
| David Richards | Wells Fargo | -4393 |
| Archer Equity Group, LLC | Wells Fargo | -6317 |
| David Richards | ServisFirst | -5425 |
| Nathanael Raymond Burdette | ServisFirst | -6778 |
| Nathanael Raymond Burdette | ServisFirst | -6809 |
| Haley Burdette | Regions Bank | -5179 |
| Haley Burdette | Regions Bank | -6654 |
| Nathan Burdette | Coinbase | ID #cf73 |
| Haley Burdette | Venmo | -0145 |
| Gary Rapp | Bank of America | - 7654 |
| Gary Rapp | Triumph Account | -3889 |
| Gary Rapp | Triumph Account | -6154 |
| Gary Rapp | US Bank | -1726 |
| Gary Rapp | TD Ameritrade | -0504 |
| Gary Rapp | TD Ameritrade | -0505 |
| Gary Rapp | TD Ameritrade | -9260 |
| Gary Rapp | TD Ameritrade | -7808 |
| Matthew Voorhees | ServisFirst | -4915 |
| Matthew Voorhees | Bank of America | -0161 |
| Matthew Voorhees | Wells Fargo | -7234 |
| Chris and Melissa Donaldson | PNC Bank | -6203 |
| Chris Donaldson | Equity Trust | -1400 |
| David Richards | Wells Fargo (Savings) | -2225 |
| David Richards | Wells Fargo (Checking) | -4393 |
| David Richards | Wells Fargo (Business Checking Archer Equity Group) | -6317 |

| David Richards | ServisFirst Bank | -5425 |
| David Richards | Venmo | ID -6483 |
| David Richards | Venmo | ID -3957 |
| David Richards | USAA Federal Savings Bank | -8681 |
| David Richards | PayPal | -5900 |
| David Richards | PayPal | -8895 |
| David Richards | TD Ameritrade, Inc. | -9637 |
| David Richards | TD Ameritrade, Inc. | -7127 |
| Christopher Burdette | ServisFirst | -9295 |

## b.    REAL PROPERTY (full legal descriptions attached as Exhibit A)

1.    100 Morrow Avenue, Trussville, Alabama

2.    101 Beech St, Trussville, Alabama

3.    102 Morrow Avenue, Trussville, Alabama

4.    104 Morrow Avenue, Trussville, Alabama

5.    1042 Regent Park Dr, Birmingham, Alabama 35242

6.    106 Morrow Avenue, Trussville, Alabama

7.    1060 Alpine Way, Pelham, Alabama 35124

8.    108 Morrow Avenue, Trussville, Alabama

9.    110 Morrow Avenue, Trussville, Alabama

10.    112 South Chalkville Rd, Trussville, Alabama

11.    114 South Chalkville Rd, Trussville, Alabama

12.    1148 Oak Creek Trail NE, Birmingham, Alabama, 35215

13.    116 16th Court Circle, Birmingham, Alabama 35215

14.    1654 Double Eagle Trail, Naples, Florida 34120

15.    16615 East Phillips Place, Englewood, Colorado 80112

16.    19 Merriam Way Upton Massachusetts 01568

17.    2024 Lake Heather Drive, Birmingham, Alabama 35242

18.    2037 Lake Heather Drive, Birmingham, Alabama 35242

19.  2113 31st Street Ensley, Birmingham, Alabama 35208

20.  2521 7th Street NE, Birmingham, Alabama 35215

21.  300 Griffin Park Trace, Birmingham, Alabama 35242

22.  374 St. John Road, Birmingham, Alabama 35215

23.  3979 Waterford Lane, Las Vegas, Nevada 89119

24.  5394 Greystone Way, Birmingham, Alabama 35242

25.  5405 Clubhouse Lane Trussville, Alabama 35173

26.  66-03-05-1-001-005.000, Gulf Shores, Alabama

27.  66-03-05-1-001-014.001, Gulf Shores, Alabama

28.  66-03-05-1-001-017.000, Gulf Shores, Alabama

29.  7824 1st Avenue South, Birmingham, Alabama 35206

30.  801 Park Paseo Las Vegas, Nevada 89104

**c.**  **PERSONAL PROPERTY**

1.  2021 Cadillac Escalade VIN 1GYS4PKL0MR270435 titled to "J.B." and payments made by N. BURDETTE

2.  Jewelry purchased with proceeds by N. BURDETTE, including a Cartier Watch, diamond bracelet, and "Red44" necklace

3.  Handbags and/or purses purchased by with proceeds by N. BURDETTE

4.  2019 Mercedes GLE VIN 4JGDA7EB4KB185027 belonging to, payments made by, and/or titled to Mark A. GIAQUINTO

5.  2018 Mercedes S450 VIN WDDUG6GB5JA353147 belonging to, payments made by, and/or titled to Timothy J. PUGHSLEY

**d.**  **MONEY JUDGMENT**

A forfeiture money judgment representing the value of all proceeds of and/or property involved in the criminal activity as described in Count One.

3.   If any of the personal or real property described above, as a result of any act or omission of Defendant[s]:

      a.    cannot be located upon the exercise of due diligence;

      b.    has been transferred or sold to, or deposited with, a third party;

      c.    has been placed beyond the jurisdiction of the court;

      d.    has been substantially diminished in value; or

      e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

## SECOND NOTICE OF FORFEITURE

1.   The allegations contained in Counts 94-114 of this Second Superseding Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 982(a)(1).

2.   Pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction of one or more of the offenses charged in Counts 94-114 of this Second Superseding Indictment, Defendants,

**TIMOTHY J. PUGHSLEY, GARY L. RAPP, JR., MARK GIAQUINTO, MATTHEW D. VOORHEES, DAVID RICHARDS, CHRISTOPHER DONALDSON, JOSHUA GENTRUP, CHRISTOPHER BURDETTE, NATHANAEL BURDETTE, JONATHAN LIND, AND THOMAS V. ZITO,**

shall forfeit to the United States of America any property, real or personal, involved in such offense(s), and any property traceable to such property. The property to be forfeited includes, but is not limited to, the following:

### a.     THE CONTENTS OF THE FOLLOWING FINANCIAL ACCOUNTS:

| Name on Account | Financial Institution | Account No. |
|---|---|---|
| Giaquinto Properties / Mark Giaquinto | Bank of America | -4133 |
| GSC Group Inc / Mark Giaquinto | Bank of America | -1121 |
| GSC Group Inc / Mark Giaquinto | Bank of America | -7045 |
| Jonathan D. Lind | Regions Bank | -5076 |
| Jonathan Lind | PNC Bank | -0952 |
| Jonathan Lind | Truist Bank | -1423 |
| Lind Retail Group LLC | PNC Bank | -1162 |
| Mark A. Giaquinto | Bank of America | -0641 |
| Mark A. Giaquinto | National Financial Services LLC (Fidelity / Commonwealth Financial Network) | -5201 *Up to $330,000 |
| Mark A. Giaquinto | National Financial Services LLC (Fidelity / Commonwealth Financial Network) | -5631 *Up to $1,402,500 |
| Mark A. Giaquinto | Worcester Fire Dept. Credit Union | -3403 *Up to $2,181,152.46 |
| Timothy J Pughsley | Avadian Credit Union | -7720 |
| Tim Pughsley | Bank of America | -7875 |
| Tim J Pughsley | Bank of America | -7782 |
| Tim J Pughsley | Bank of America | -9969 |
| Matthew D Voorhees, Tim J Pughsley | Bank of America | -0158 |
| Tim Pughsley | BB&T | -2077 |

| Megan Pughsley | PNC Bank (fka BBVA Compass) | -2315 (fka -0183) |
|---|---|---|
| Megan Pughsley | PNC Bank (fka BBVA Compass) | -8933 (fka -1240) |
| Timothy James Pughsley | Bryant Bank | -9111 |
| Timothy Pughsley | Bitcoin | XGWFE |
| Timothy Pughsley | Bitcoin | X5mfw |
| Eighty-Five South, LLC/Joshua Gentrup | United Bank | -4797 |
| Joshua Gentrup | Wells Fargo | -3192 *Up to $136,663 |
| Joshua Gentrup | JP Morgan Chase | -6516 *Up to $699,105.03 |
| Joshua Gentrup | Bank of America | -6896 |
| Kirsten Milsap | JP Morgan Chase | -2085 |
| Timothy James Pughsley | Citibank | -8775 |
| Tim Pughsley | Fidelity | -6919 |
| Tim Pughsley | Fidelity | -7846 |
| Tim Pughsley | Fidelity | -4669 |
| Megan Pughsley | Fidelity | -4992 |
|  |  |  |
| Megan M Pughsley | Fidelity (MML Investors Services) | -7787 |
| Devin Taylor Pughsley OR Timothy J Pughsley | Fifth Third Bank | -0944 |
| Timothy J Pughsley | FirstBank | -3022 |
| Tim Pughsley | Goldman Sachs | -7749 |
| Tim Pughsley | Goldman Sachs | -4477 |
| Megan Pughsley | Goldman Sachs | -5287 |
| Tim Pughsley | SunTrust (Truist) | -3189 |
| Tim Pughsley | Synchrony Bank | -0466 |
| Tim Pughsley | TD Ameritrade (Scottrade) | -4768 (-7326) |
| Tim J Pughsley | TD Ameritrade (Scottrade) | -5267 (-7921) |
| Tim J Pughsley | USAA | -5809 |
| Tim J Pughsley | USAA | -5817 |
| Megan Pughsley | USAA | -4768 |

| Tim Pughsley | Wells Fargo | -8243 |
|---|---|---|
| Tim Pughsley | Wells Fargo | -1072 |
| Tim Pughsley | Wells Fargo | -1596 |
| Megan McWaters Pughsley | Wells Fargo | -9863 |
| David Richards | Wells Fargo | -4393 |
| Archer Equity Group, LLC | Wells Fargo | -6317 |
| David Richards | ServisFirst | -5425 |
| Nathanael Raymond Burdette | ServisFirst | -6778 |
| Nathanael Raymond Burdette | ServisFirst | -6809 |
| Haley Burdette | Regions Bank | -5179 |
| Haley Burdette | Regions Bank | -6654 |
| Nathan Burdette | Coinbase | ID #cf73 |
| Haley Burdette | Venmo | -0145 |
| Gary Rapp | Bank of America | - 7654 |
| Gary Rapp | Triumph Account | -3889 |
| Gary Rapp | Triumph Account | -6154 |
| Gary Rapp | US Bank | -1726 |
| Gary Rapp | TD Ameritrade | -0504 |
| Gary Rapp | TD Ameritrade | -0505 |
| Gary Rapp | TD Ameritrade | -9260 |
| Gary Rapp | TD Ameritrade | -7808 |
| Matthew Voorhees | ServisFirst | -4915 |
| Matthew Voorhees | Bank of America | -0161 |
| Matthew Voorhees | Wells Fargo | -7234 |
| Chris and Melissa Donaldson | PNC Bank | -6203 |
| Chris Donaldson | Equity Trust | -1400 |
| David Richards | Wells Fargo (Savings) | -2225 |
| David Richards | Wells Fargo (Checking) | -4393 |
| David Richards | Wells Fargo (Business Checking Archer Equity Group) | -6317 |
| David Richards | ServisFirst Bank | -5425 |
| David Richards | Venmo | ID -6483 |
| David Richards | Venmo | ID -3957 |

| David Richards | USAA Federal Savings Bank | -8681 |
|---|---|---|
| David Richards | PayPal | -5900 |
| David Richards | PayPal | -8895 |
| David Richards | TD Ameritrade, Inc. | -9637 |
| David Richards | TD Ameritrade, Inc. | -7127 |
| Christopher Burdette | ServisFirst | -9295 |

**b.    REAL PROPERTY (full legal descriptions attached as Exhibit A)**

1.   100 Morrow Avenue, Trussville, Alabama

2.   101 Beech St, Trussville, Alabama

3.   102 Morrow Avenue, Trussville, Alabama

4.   104 Morrow Avenue, Trussville, Alabama

5.   1042 Regent Park Dr, Birmingham, Alabama 35242

6.   106 Morrow Avenue, Trussville, Alabama

7.   1060 Alpine Way, Pelham, Alabama 35124

8.   108 Morrow Avenue, Trussville, Alabama

9.   110 Morrow Avenue, Trussville, Alabama

10.  112 South Chalkville Rd, Trussville, Alabama

11.  114 South Chalkville Rd, Trussville, Alabama

12.  1148 Oak Creek Trail NE, Birmingham, Alabama, 35215

13.  116 16th Court Circle, Birmingham, Alabama 35215

14.  1654 Double Eagle Trail, Naples, Florida 34120

15.  16615 East Phillips Place, Englewood, Colorado 80112

16.  19 Merriam Way Upton Massachusetts 01568

17.  2024 Lake Heather Drive, Birmingham, Alabama 35242

18.  2037 Lake Heather Drive, Birmingham, Alabama 35242

19.  2113 31st Street Ensley, Birmingham, Alabama 35208

20.  2521 7th Street NE, Birmingham, Alabama 35215

21. 300 Griffin Park Trace, Birmingham, Alabama 35242

22. 374 St. John Road, Birmingham, Alabama 35215

23. 3979 Waterford Lane, Las Vegas, Nevada 89119

24. 5394 Greystone Way, Birmingham, Alabama 35242

25. 5405 Clubhouse Lane Trussville, Alabama 35173

26. 66-03-05-1-001-005.000, Gulf Shores, Alabama

27. 66-03-05-1-001-014.001, Gulf Shores, Alabama

28. 66-03-05-1-001-017.000, Gulf Shores, Alabama

29. 7824 1st Avenue South, Birmingham, Alabama 35206

30. 801 Park Paseo Las Vegas, Nevada 89104

c.     **PERSONAL PROPERTY**

1. 2021 Cadillac Escalade VIN 1GYS4PKL0MR270435 titled to "J.B." and payments made by N. BURDETTE

2. Jewelry purchased with proceeds by N. BURDETTE, including a Cartier Watch, diamond bracelet, and "Red44" necklace

3. Handbags and/or purses purchased by with proceeds by N. BURDETTE

4. 2019 Mercedes GLE VIN 4JGDA7EB4KB185027 belonging to, payments made by, and/or titled to MARK A. GIAQUINTO

5. 2018 Mercedes S450 VIN WDDUG6GB5JA353147 belonging to, payments made by, and/or titled to TIMOTHY J. PUGHSLEY

d.     **MONEY JUDGMENT**

A forfeiture money judgment representing the value of all proceeds of and/or property involved in the criminal activity as described in Counts 94-114.

5.     If any of the property described above, as a result of any act or omission of Defendant[s]:

      a.     cannot be located upon the exercise of due diligence;

      b.     has been transferred or sold to, or deposited with, a third party;

      c.     has been placed beyond the jurisdiction of the court;

      d.     has been substantially diminished in value; or

      e.     has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

A TRUE BILL.

 */s/ electronic signature*
GRAND JURY FOREPERSON

                    PRIM F. ESCALONA
                    United States Attorney

                     */s/ electronic signature*
                    CATHERINE L. CROSBY
                    Assistant United States Attorney

                     */s/ electronic signature*
                    KRISTEN S. OSBORNE
                    Assistant United States Attorney

                     */s/ electronic signature*
                    RYAN RUMMAGE
                    Assistant United States Attorney

# EXHIBIT A

## Full Legal Descriptions of Real Property

**Real property located at 19664 36th Ave. W. Garris Lane, Gulf Shores, AL 36542 (66-03-05-1-001-005.000, 66-03-05-1-001-014.001, and 66-03-05-1-001-017.000), together with all buildings, appurtenances, improvements, rents, leasehold interests, fixtures, attachments and easements thereon, and all rights appertaining thereto, more particularly described as follows:**

PARCEL A:

Commence at the Northeast corner of the Northeast Quarter of the Northeast Quarter of Section 5, Township 9 South, Range 4 East, Baldwin County, Alabama; thence along said North section line run North 89 degrees 47 minutes 47 seconds West 396.00 feet; thence run South 00 degrees 00 minutes 27 seconds West 520.12 feet for the point of beginning for herein parcel described; thence continue South 00 degrees 00 minutes 27 seconds West 306.01 feet to a point on the North right of way of 34th Avenue W (36' R/W); thence run along said right of way North 89 degrees 40 minutes 24 seconds West 496,13 feet; thence leaving said right of way run North 00 degrees 00 minutes 27 seconds East 830.07 feet; thence run South 89 degrees 47 minutes 47 seconds East 88.00 feet; thence run South 00 degrees 00 minutes 27 seconds West 110 feet; thence run South 89 degrees 47 minutes 47 seconds East 72.00 feet; thence run North 00 degrees 00 minutes 27 seconds East 345.00 feet; thence run South 69 degrees 47 minutes 47 seconds East 167.50 feet; thence run South 00 degrees 00 minutes 27 seconds West 260.12 feet; thence run South 89 degrees 47 minutes 47 seconds East 168.62 feet to the point of beginning. The above described parcel lying in the Northeast Quarter of the Northeast Quarter of Section 5, Township 9 South, Range 4 East, Baldwin County, Alabama, and containing 10.058 acres, more or less.

PARCEL B:

Commencing at the Northwest corner of the Northeast Quarter of the Northeast Quarter of Section 5, Township 9 South, Range 4 East, run South 00 degrees 05 minutes East 504.3 feet to the Point of Beginning; continue thence South 00 degrees 05 minutes East 821.2 feet; thence run North 89 degrees 4 minutes East 428.8 feet; thence run North 00 degrees 04 minutes West 694.7 feet; thence run South 89 degrees 53 minutes West 210.1 feet; thence run North 00 degrees 04 minutes West 130.1 feet; thence run South 89 degrees 06 minutes West 218,9 feet to the Point of beginning. All being 7.5 acres, more or less, and lying in Section 5, Township 9 South, Range 4 East, Baldwin County, Alabama.

PARCEL C:

West one half of the Northeast Quarter, Section 5, Township 9 South, Range 4 East, Baldwin County, Alabama.

LESS AND EXCEPT THE FOLLOWING:

Beginning at the Northeast corner of Section 5, Township 9 South, Range 4 East, run thence south 89 degrees 53 minutes 24 seconds West for 1483.5 feet; run thence South 00 degrees 06 minutes 36 seconds East for 20 feet to the Point of Beginning; run thence South 00 degrees 06 minutes 36 seconds East for 167.6 feet; run thence South 89 degrees 53 minutes 24 seconds West for 259.9 feet; run thence North 00 degrees 06 minutes 36 seconds West for 167.3 feet; run thence North 89 degrees 53 minutes 24 seconds East for 259.9 feet to the Point of Beginning. Said land being the Section 5, Township 9 South, Range 4 East.

FURTHER LESS AND EXCEPT THE FOLLOWING:

Commence at the Northeast corner of the Northwest Quarter of the Northeast Quarter of Section 5, Township 9 South, Range 4 East, run thence South 00 degrees 08 minutes 03 seconds West for 20 feet; run thence on said bearing for 167.6 feet; run thence North 89 degrees 51 minutes 57 seconds West for 60 feet for the Point of Beginning; thence continue on said bearing for 259,9 feet; run thence South 00 degrees 08 minutes 03 seconds West for 167.6 feet; run thence south 89 degrees 51 minutes 57 seconds East for 259.9 feet; run thence North 00 degrees 08 minutes 03 seconds East for 167,6.feet to the point of beginning; said land being located in Section 5, Township 9 South, Range 4 East, Baldwin County, Alabama.

FURTHER LESS AND EXCEPT THE FOLLOWING:

Commence at the Northeast corner of the Northwest Quarter of the Northeast Quarter of Section 5, Township 9 South, Range 4 East; run thence South 00 degrees 08 minutes 03 seconds West for 20 feet; run thence North 89 degrees 51 minutes 57 seconds West for 60 feet to the point of beginning; thence continue on said bearing for 97.5 feet; run thence South 00 degrees 08 minutes 03 seconds West for 167.6 feet; run thence South 89 degrees 51 minutes 57 seconds East for 97,5 feet; run thence North 00 degrees 06 minutes 03 seconds East for 167.6 feet to the Point of beginning. Said land being in Section 5, Township 9. South, Range 4 East, Baldwin County, Alabama.

FURTHER LESS AND EXCEPT THE FOLLOWING:

Commencing at the Northeast corner of Section 5, Township 9 South, Range 4 East. Baldwin County, Alabama; thence run North 89 degrees 43 minutes 31 seconds West a distance of 1,324.21 feet to a point; thence run South 89 degrees 53 minutes 24 seconds West a distance of 745.45 feet to the Point of Beginning; thence run South 00 degrees 19 minutes 12 seconds East a distance of 900.00 feet to a point; thence run South 89 degrees 53 minutes 24 seconds West a distance of 580.00 feet to a point; thence run North 00 degrees 19 minutes 12 seconds West a distance of 900 feet to a point; thence run North 89 degrees 53 minutes 24 seconds East a distance of 580.00 feet to the point of beginning.

Situated in Baldwin County, Alabama.

Tax ID: 66-03-05-1-001-005.000, Tax ID: 66-03-05-1-001-014.001 and Tax ID: 66-03-05-1-001-017.000

**Real property located at 101 Beech St Trussville, AL 35173, together with all buildings, appurtenances, improvements, rents, leasehold interests, fixtures, attachments and easements thereon, and all rights appertaining thereto, more particularly described as follows:**

Lot 1C of Trussville Entertainment District Phase I as recorded in Map Book 249, page 46 in the Office of the Judge of Probate of Jefferson County, Alabama. Said Lot lies within the city limits of the City of Trussville, Alabama.

**Real properties located at 114 South Chalkville Rd, 112 South Chalkville Rd, 100 Morrow Ave, 102 Morrow Ave, 104 Morrow Ave, and 106 Morrow Ave., all in Trussville, AL 35173, together with all buildings, appurtenances, improvements, rents, leasehold interests, fixtures, attachments and easements thereon, and all rights appertaining thereto, more particularly described as follows:**

PARCEL I:

Lots "A" and "C", according to the Survey of Bonner Subdivision, as recorded in Map Book 77, Page 1, in the Probate Office of Jefferson County, Alabama.

PARCEL II:

Lot "B" according to the Survey of Bonner Subdivision as recorded is Map Book 77, Page 1, is the Probate Office of Jefferson County, Alabama.

PARCEL III:

Lot "D" according to the Survey of Bonner Subdivision as recorded in Map Book 77, Page 1, in the Probate Office of Jefferson County, Alabama.

PARCEL IV:

Lots 6, 7, 8, 9, 10 and 11, Block 2, according to the Survey of Acton's Addition to Trussville, Plat A, as recorded in Map Book 15, Page 83, in the Probate Office of Jefferson County, Alabama, Birmingham Division.

PARCEL V:

Lot 2, amended Map of a Resurvey as recorded in the Office of the Judge of Probate of Jefferson County, Alabama, in Map Book 187, page 56. A Resurvey of Lot 2A of a Resurvey of Lot 2, Bama Developers Addition to Trussville as recorded in the Office of the Judge of Probate of Jefferson County, Alabama, in Map Book 145, page 66 and a Resurvey of Lot C, of a Resurvey of Lot 2C of a Resurvey of Lot 2, Bama Developers Addition to Trussville as recorded its the Office of the Judge of Probate of Jefferson County, Alabama in Map Book 163, page 11 and a Resurvey of Lot 4A of a Resurvey of Lots 3 and 4, Bama Developers Addition to Trussville as recorded in the Office of the Judge of Probate of Jefferson County, Alabama, in Map Book 152, page 9 and a Resurvey of Lots A & B of a Resurvey of Lot 4 A of a Resurvey of Lots 3 and 4, Bama Developers

Addition to Trussville as recorded in the Office of the Judge of Probate of Jefferson County, Alabama, in Map Book 168, page 42, all being recorded in Map Book 187, page 80 in the Probate Office of Jefferson County, Alabama, Birmingham Division.

Less and except the following:

Begin at the SW corner of said Lot 2, said point being the point of beginning. Thence in a Northeasterly direction along the south line of said Lot 34.90 feet; Thence 90 degrees 12' 05" to the left 34.90 feet; thence 89 degrees 47' 55" to the left 34.90 feet; thence 90 degrees 12' 05" to the left 1.00 feet to the point of beginning.

PARCEL VI:

Lot 9, and the south forty-six feet and six inches (46' 6") of Lot 8, in Block 1, Plat A, according to the Survey of Acton's Addition to Trussville, as recorded in Map Book 15, Page 83, in the Probate Office of Jefferson County, Alabama.

PARCEL VII:

Lot 10, in Block 1, according to the Survey of Acton's Addition to Trussville, Plot A, as recorded in Map Book 15, Page 83, in the Probate Office of Jefferson County, Alabama.

**Real property located at 108 Morrow Avenue, Trussville, AL 35173, together with all buildings, appurtenances, improvements, rents, leasehold interests, fixtures, attachments and easements thereon, and all rights appertaining thereto, more particularly described as follows:**

Part of the Northwest 1/4 of the Northeast 1/4 of Section 26, Township 16 South, Range 1 West, as situated in Jefferson County, Alabama, being more particularly described as follows:

Commence at the intersection of the Westerly right of way of Morrow Street and the South right of way of Birmingham-Gadsden Highway (U.S. Highway 11); thence Southwardly along the Westerly right of way line of Morrow Street for a distance of 520 feet to the point of beginning; thence turn right 90 degrees and Westwardly for a distance of 100 feet; thence turn left 90 degrees and Southwardly for a distance of 100 feet; thence turn left 90 degrees and Eastwardly for a distance of 100 feet; thence Northwardly and along the Westerly right of way of Morrow Street 100 feet to the point of beginning.

Tax ID: 12 00 26 1 004 010.001

**Real property located at 110 Morrow Avenue, Trussville, AL 35173, together with all buildings, appurtenances, improvements, rents, leasehold interests, fixtures, attachments and easements thereon, and all rights appertaining thereto, more particularly described as follows:**

Part of the Northwest 1/4 of the Northeast 1/4 of Section 26, Township 16 South, Range 1 West, situated in Jefferson County, Alabama, more particularly described as follows:

50

Commence at the intersection of the West right-of-way line of Morrow Street and the South right-of-way line of Birmingham-Gadsden Highway (U.S. #11); thence run Southerly along the West right-of-way line of Morrow Street 620.00 feet to the point of beginning; thence turn right 90 degrees and run Westerly 100.0 feet; thence turn left 90 degrees and run Southerly 133.9 feet; thence turn left 99 degrees 29 minutes and run Easterly 101.98 feet along the North right-of-way line of the A.G. & S. Railway; thence turn left 80 degrees 31 minutes and run Northerly 117.2 feet along the West right-of-way line of Morrow Street to the point of beginning.

12 00 26 1 004 010.000 - (parcel no longer exists) now part of 12 00 26 1 004 010.001 and Tax ID: 12 00 26 1 004 005.008

**Real property located at 116 16th Court Circle, Center Point, Alabama 35215, together with all buildings, appurtenances, improvements, rents, leasehold interests, fixtures, attachments and easements thereon, and all rights appertaining thereto, more particularly described as follows:**

Lot 12, Block 2, according to the Survey of Stardust Manor Sector 11, as recorded in Map Book 60, Page 34, in the Probate Office of Jefferson County, Alabama.

Tax ID: 12 00 19 1 003 032.000

**Real property located at 374 St. John Road, Birmingham, AL 35215, together with all buildings, appurtenances, improvements, rents, leasehold interests, fixtures, attachments and easements thereon, and all rights appertaining thereto, more particularly described as follows:**

Lot 19, according to the Survey of M. J. Beasley, Jr., addition to Pinson, as recorded in May Book 126, Page 3 in the office of the Judge of Probate of Jefferson County, Alabama.

**Real property located at 1042 Regent Park Drive, Birmingham, AL 35242, together with all buildings, appurtenances, improvements, rents, leasehold interests, fixtures, attachments and easements thereon, and all rights appertaining thereto, more particularly described as follows:**

Lot 120, according to the Survey of The Village at Highland Lakes, Regent Park Neighborhood, an Eddleman Community, as recorded in Map Book 37, Page 130, in the Office of the Judge of Probate of Shelby County, Alabama.

Together with nonexclusive easement to use the private roadways, Common areas all as more particularly described in the Easements and Master Protective Covenants for The Village at Highland Lakes, a Residential Subdivision, recorded as Instrument No. 20060421000186650 in the Probate Office of Shelby County, Alabama, and the Declaration of Covenants. Conditions and Restrictions for The Village at Highland Lakes, a Residential Subdivision, Sector One, recorded as Instrument No. 20060421000186670, in the Probate Office of Shelby County, Alabama (which all amendments thereto, is hereinafter collectively referred to as the "Declaration".

Tax ID: 09 2 03 0 003 055.000

**Real property located at 1060 Alpine Way, Pelham, AL 35124, together with all buildings, appurtenances, improvements, rents, leasehold interests, fixtures, attachments and easements thereon, and all rights appertaining thereto, more particularly described as follows:**

Lot 24, according to the Plat of Sector Two, Spring Garden Estates, Second Sector, as recorded in Map Book 5, Page 12, in the Probate Office of Shelby County, Alabama.

Subject to: All easements, restrictions and rights of way of record.

**Real property located at 1148 Oak Creek Trail NE, Birmingham, AL 35215, together with all buildings, appurtenances, improvements, rents, leasehold interests, fixtures, attachments and easements thereon, and all rights appertaining thereto, more particularly described as follows:**

Lot 23, according to the Survey of Oak Shadow, as recorded in Map Book 114, Page 6, in the Probate Office of Jefferson County, Alabama; being situated in Jefferson County, Alabama.

**Real property located at 1654 Double Eagle Trail, Naples, FL 84120, together with all buildings, appurtenances, improvements, rents, leasehold interests, fixtures, attachments and easements thereon, and all rights appertaining thereto, more particularly described as follows:**

Lot 234, Valencia Golf and Country Club-Phase 2, according to the map or plat thereof, as recorded in Plat Book 44, page(s) 11, of the Public Records of Collier County, Florida.

Tax ID: 78695210745

**Real property located at 2024 Lake Heather Drive, Birmingham, AL 35242, together with all buildings, appurtenances, improvements, rents, leasehold interests, fixtures, attachments and easements thereon, and all rights appertaining thereto, more particularly described as follows:**

LOT 33, ACCORDING TO THE SURVEY OF LAKE HEATHER ESTATES (GIVIANPOUR'S ADDITION TO INVERNESS), AS RECORDED IN MAP BOOK 16, PAGE 121 A, B AND C, IN THE PROBATE OFFICE OF SHELBY COUNTY, ALABAMA.

TOGETHER WITH A NONEXCLUSIVE EASEMENT TO USE THE PRIVATE ROADWAYS, ACCESS EASEMENTS AND OTHER EASEMENTS, ALL AS MORE PARTICULARLY DESCRIBED IN THE DECLARATION OF PROTECTIVE COVENANTS FOR LAKE HEATHER ESTATES RECORDED IN INSTRUMENT NO. 1992-18226, AS AMENDED BY INSTRUMENT NO. 1992-26078, IN THE PROBATE OFFICE OF SHELBY COUNTY, ALABAMA (WHICH, TOGETHER WITH ALL AMENDMENTS THERETO, IS HEREINAFTER COLLECTIVELY REFERRED TO AS THE "DECLARATION").

TOGETHER WITH A NONEXCLUSIVE EASEMENT FOR ACCESS TO THE PROPERTY ALONG THE LANDS DESCRIBED AS TRACT II IN THAT CERTAIN DEED RECORDED IN INSTRUMENT NO. 1992-18226 IN THE AFORESAID OFFICE.

Tax ID: 10 1 01 0 001 003.037

**Real property located at 2037 Lake Heather Drive, Birmingham, AL 35242, together with all buildings, appurtenances, improvements, rents, leasehold interests, fixtures, attachments and easements thereon, and all rights appertaining thereto, more particularly described as follows:**

LOT 39, ACCORDING TO THE SURVEY OF LAKE HEATHER ESTATES (GIVIANPOUR'S ADDITION TO INVERNESS), AS RECORDED IN MAP BOOK 16, PAGE 121 A, B AND C, IN THE PROBATE OFFICE OF SHELBY COUNTY, ALABAMA.

TOGETHER WITH A NONEXCLUSIVE EASEMENT TO USE THE PRIVATE ROADWAYS, ACCESS EASEMENTS AND OTHER EASEMENTS, ALL AS MORE PARTICULARLY DESCRIBED IN THE DECLARATION OF PROTECTIVE COVENANTS FOR LAKE HEATHER ESTATES RECORDED IN INSTRUMENT NO. 1992-18226, AS AMENDED BY INSTRUMENT NO. 1992-26078, IN THE PROBATE OFFICE OF SHELBY COUNTY, ALABAMA (WHICH, TOGETHER WITH ALL AMENDMENTS THERETO, IS HEREINAFTER COLLECTIVELY REFERRED TO AS THE "DECLARATION").

TOGETHER WITH A NONEXCLUSIVE EASEMENT FOR ACCESS TO THE PROPERTY ALONG THE LANDS DESCRIBED AS TRACT II IN THAT CERTAIN DEED RECORDED IN INSTRUMENT NO. 1992-18226 IN THE AFORESAID OFFICE.

Tax ID: 10 1 01 0 001 003.043

**Real property located at 2113 31st Street Ensley, Birmingham, AL 35208, together with all buildings, appurtenances, improvements, rents, leasehold interests, fixtures, attachments and easements thereon, and all rights appertaining thereto, more particularly described as follows:**

Lot 6, Block 1, according to the Survey of Oak Terrace Addition to Birmingham, as recorded in Map Book 13, Page 9, in the Probate Office of Jefferson County, Alabama.

Tax ID: 29 00 05 3 019 006.000

**Real property located at 2521 7th Street NE, Center Point, AL 35215, together with all buildings, appurtenances, improvements, rents, leasehold interests, fixtures, attachments and easements thereon, and all rights appertaining thereto, more particularly described as follows:**

Lot 6, Block 3, according to the Corrected Map of Holiday Park Estates, First Sector, recorded in Map Book 43 page 94, in the Probate Office of Jefferson County, Alabama.

Tax ID: 12 00 08 3 001 099.000

**Real property located at 7824 1ST Avenue South, Birmingham, AL 35206, together with all buildings, appurtenances, improvements, rents, leasehold interests, fixtures, attachments and easements thereon, and all rights appertaining thereto, more particularly described as follows:**

Lot 7, Block 102, according to the Survey of East Lake, as recorded in Map Book 1, Page 217, in the Office of the Judge of Probate of Jefferson County, Alabama.

Tax ID: 23-00-11-3-029-019.000

**Real property located at 16615 East Phillips Place, Englewood, CO 80112, together with all buildings, appurtenances, improvements, rents, leasehold interests, fixtures, attachments and easements thereon, and all rights appertaining thereto, more particularly described as follows:**

Lot 9, Block 14, Southcreek Subdivision, Filling No. 1, County of Arapahoe, State of Colorado.

Tax ID: 207332408009

**Real property located at 19 Merriam Way, Upton, MA 01568, together with all buildings, appurtenances, improvements, rents, leasehold interests, fixtures, attachments and easements thereon, and all rights appertaining thereto, more particularly described as follows:**

Lot 34 on a plan of land entitled "Definitive Plan Warren Woods a Subdivision in Upton, Massachusetts" dated February 28, 1989, made by Guerriere & Halnon, Inc. Engineering and Land Surveying" which plan is recorded with the Worcester County (Worcester District) Registry of Deeds in Plan Book 624 Plan 66, and to which plan reference may be made for a more particular description of said Lot 34.

**Real property located at 801 Park Paseo Las Vegas, NV 89104, together with all buildings, appurtenances, improvements, rents, leasehold interests, fixtures, attachments and easements thereon, and all rights appertaining thereto, more particularly described as follows:**

LOT NINE (9), TEN (10) AND ELEVEN (11) IN BLOCK ONE (1) OF VEGA VERDE ADDITION TO THE CITY OF LAS VEGAS, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 2, OF PLATS, PAGE 26, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.

EXCEPTING THEREFROM THAT PORTION OF LOT NINE (9) OF BLOCK ONE (1) OF VEGAS VERGE ADDITION TO THE CITY OF LAS VEGAS, DESCRIBED AS FOLLOWS:

COMMENCING AT THE NORTHWEST CORNER OF SAID LOT NINE (9): THENCE SOUTH 45° 41' EAST ALONG THE NORTH LINE OF SAID LOT NINE (9) A DISTANCE OF 86.33 FEET TO THE NORTHEAST CORNER OF SAID LOT NINE (9);

ALSO BEING THE SOUTHWEST CORNER OF SAID LOT EIGHT (8) OF SAID BLOCK ONE (1);

THENCE SOUTH 89° 59' WEST A DISTANCE OF 87.77 FEET TO A POINT IN THE EAST LINE OF EIGHTH STREET;

THENCE NORTH 23° 22' EAST ALONG THE EAST LINE OF SAID EIGHTH STREET A DISTANCE OF 55.84 FEET TO THE POINT OF BEGINNING.

FURTHER EXCEPTING THEREFROM THE EAST THIRTY (30) FEET AS RESERVED IN THAT CERTAIN DEED RECORDED OCTOBER 13, 1948 IN BOOK 58 OF DEEDS, PAGE 210, IN THE OFFICE OF THE COUNTY RECORDER.

FURTHER EXCEPTING THEREFROM THAT PORTION OF LOT TEN (10) AS CONVEYED TO THE CITY OF LAS VEGAS, BY DEED RECORDED APRIL 14, 1949 IN BOOK 59 OF DEEDS, PAGE 581 IN THE OFFICE OF THE COUNTY RECORDER, CLARK COUNTY, NEVADA.

**Real property located at 5405 Clubhouse Lane, Trussville, AL 35173, together with all buildings, appurtenances, improvements, rents, leasehold interests, fixtures, attachments and easements thereon, and all rights appertaining thereto, more particularly described as follows:**

Lot 10, according to the Survey of Longmeadow Phase D Sector One, as recorded in Map Book 217, Page 1, in the Probate Ofice of Jefferson County, Alabama.

Subject to existing easements, restrictions, set black lines, rights of way, limitations, if any, of record.

Tax ID: 12 00 12 2 000 070.000

**Real property located at 3979 Waterford Lane, Las Vegas, NV 89119, together with all buildings, appurtenances, improvements, rents, leasehold interests, fixtures, attachments and easements thereon, and all rights appertaining thereto, more particularly described as follows:**

LOT FORTY-SEVEN (47) IN BLOCK THREE (3) OF WATKINS GLEN UNIT NO. 3, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 24 OF PLATS, PAGE 10, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.

**Real Property located at 300 Griffin Park Trace, Birmingham, AL 35242, together with all buildings, appurtenances, improvements, rents, leasehold interests, fixtures, attachments and easements thereon, and all rights appertaining thereto, more particularly described as follows:**

Lot B-179, according to the Survey of Griffin Park at Eagle Point, Sector 2, Phase 1, as recorded in Map Book 48, Page 98, A, B, C, D and E, in the Probate Office of Shelby County, Alabama.

**Real property located at 5394 Greystone Way, Birmingham, AL 35242, together with all buildings, appurtenances, improvements, rents, leasehold interests, fixtures, attachments and easements thereon, and all rights appertaining thereto, more particularly described as follows:**

Lot 2-A, according to a Resurvey of Lots 2 and 3, Greystone, 6th Sector, Phase I, as recorded in Map Book 37, Page 141, in the Probate Office of Shelby County, Alabama.

And also recorded as:

Lot 2B, according to a Resurvey of Lot 2A, Resurvey of Lots 2 and 3, Greystone, 6th Sector, Phase I, as recorded in Map Book 40, Page 72, in the Probate Office of Shelby County, Alabama.

Subject to existing easements, current taxes, restrictions, set-back lines and rights of way, if any, of record.

The subject property is the same property as previous deeded in deeds recorded in Instrument No. 20100412000111120; 2007090000322560; and Instrument No. 200612210000620850.